UNITED STATES of America, Appellee,

v.

Nelson SEGOVIA, Defendant-Appellant.

No. 1531, Docket 86–1145.

United States Court of Appeals, Second Circuit.

Argued Aug. 12, 1986.

Decided Aug. 27, 1986.

Russell J. Carbone, Kew Gardens, N.Y. (Mario Malerba, of counsel), for appellant.

Gregory O'Connell, Brooklyn, N.Y., Asst. U.S. Atty. for the E.D.N.Y. (Andrew J. Maloney, U.S. Atty. for the E.D.N.Y., Jane Simkin Smith, Asst. U.S. Atty., of counsel), for appellee.

Before GEORGE C. PRATT, MINER, Circuit Judges, and RE, Chief Judge of the Court of International Trade, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

Nelson Segovia appeals from a judgment of conviction for conspiracy to possess with intent to distribute, and for possession with intent to distribute, cocaine hydrochloride. Segovia alleges that the district court should have suppressed physical evidence seized from his apartment because the search warrant issued upon oral testimony pursuant to Fed.R.Crim.P. 41(c)(2) was improperly granted, and because restrictions contained in that warrant were ignored by the officers executing the warrant.

Officials were initially led to Segovia and his wife, Gladys, when a confidential informant told a detective working for the New York Drug Enforcement Task Force that he had met with the Segovias and knew that they were trafficking in substantial amounts of cocaine. On July 24, 1985, the confidential informant ("CI") telephoned Gladys to obtain a sample of cocaine. Two days later, with task force officers waiting outside, CI met with the Segovias in their Queens, New York, apartment and was given a sample of cocaine. CI informed the Segovias that if his buyer liked the cocaine he would arrange to purchase two kilograms, whereupon they responded that, once the buy was confirmed, they would contact their supplier. With this information, the task force officers telephoned Charles Rose, an Assistant United States Attorney for the Eastern District of New York, to discuss obtaining a warrant to search the Segovias' apartment.

At 6:00 p.m. that same evening CI phoned the Segovias and arranged the buy for that night. The officers on the scene again called AUSA Rose, who then made an oral application for a search warrant pursuant to Fed.R.Crim.P. 41(c)(2). The AUSA informed United States Magistrate A. Simon Chrein that he was relying on information he had received from an officer on the scene who, in turn, had received his information from a confidential informant who had previously supplied reliable information to law enforcement authorities. At 7:24 p.m. the magistrate issued a warrant authorizing a nighttime search, with the express limitation that the warrant be executed within one hour of the arrival of the narcotics.

At 7:30 p.m. an officer observed one Delfo Vanerio enter the Segovias' building carrying a brown shoulder bag and leave five minutes later without the bag. At approximately 8:00 p.m., CI was sent back into the apartment, returning at 8:20 p.m. to say that one kilogram of cocaine had been delivered and that there was a possibility that another kilogram might be delivered later that evening. With this additional information, the detectives decided to hold off on executing the warrant until the second kilogram was delivered. At some

time between 9:30 and 10:00 p.m., however, their patience wore thin and they decided to go ahead rather than risk losing the kilogram already on the premises. In the ensuing search they found a kilogram of cocaine in an open brown bag in the living room. Elsewhere in the apartment they also found and seized other, smaller packages of cocaine, as well as drug paraphernalia, money, records, and a pistol.

Although Gladys Segovia and Delfo Vanerio were indicted along with Nelson Segovia, this appeal concerns only Nelson; Gladys pled guilty to the indictment before trial, and Vanerio was acquitted by the jury. Nelson contends that all physical evidence seized during the search of his apartment should have been suppressed. First, he argues that the warrant—issued upon oral testimony given over the phone—authorizing a search of his apartment was improperly granted because an assistant United States attorney, rather than an agent in the field, acted as affiant for that warrant. Second, he claims that the execution of the warrant violated the specific time restriction imposed by the issuing magistrate. Finding no merit to his contentions, we affirm.

A federal magistrate may issue a warrant based upon sworn oral testimony given over the telephone in appropriate circumstances. Fed.R.Crim.P. 41(c)(2)(A). Segovia argues that because AUSA Rose, rather than an agent on the scene, acted as affiant for the warrant, "the Magistrate [did not have] an ample opportunity to examine and probe all aspects in support of the oral affidavit". Appellant's brief at 16. Nevertheless, rule 41 expressly provides that a telephonic search warrant may properly be issued "upon request of a federal law enforcement officer *or an attorney for the government*", Fed.R.Crim.P. 41(a) (emphasis added), and the term "attorney for the government" specifically includes "an authorized assistant of a United States Attorney", Fed.R.Crim.P. 54(c).

■ Nowhere in rule 41 is an assistant United States attorney prohibited from acting as both applicant and affiant for the search warrant. Indeed, it is clear from the advisory committee notes to rule 41 that the opposite is true:

> The applicant must orally state facts sufficient to satisfy the probable cause requirement for the issuance of the search warrant. * * * This information may come from either the applicant federal law enforcement officer or *the attorney for the government* or a witness willing to make an oral statement.

Fed.R.Crim.P. 41 advisory committee note (1977 amendment) (emphasis added); *see also United States v. Iparraguirre*, 628 F.Supp. 831, 834 (E.D.N.Y.1986). It is not necessary that an officer on the scene serve as affiant for the warrant because probable cause for the issuance of a search warrant upon oral application, just as with a warrant issued upon written affidavit, "may be based upon hearsay evidence in whole or in part", Fed.R.Crim.P. 41(c)(1); *see* Fed.R.Crim.P. 41(c)(2)(C), provided the magistrate, as here, is made aware of the circumstances underlying the affiant's statements, *see Illinois v. Gates*, 462 U.S. 213, 241–42, 103 S.Ct. 2317, 2333–34 76 L.Ed.2d 527 (1983). Because the utility of telephonic search warrants would be emasculated if an attorney for the government could not act as both affiant and applicant—passing along to the magistrate information learned from officers in the field—we reject Segovia's argument. Rule 41 procedures were fully complied with in this instance.

Segovia next argues that the search warrant was executed in contravention of the magistrate's specific directions. In authorizing a nighttime search, Magistrate Chrein directed that "the search is to be conducted * * * within an hour of the arrival of the narcotics * * * in other words I don't want narcotics to come in at 10:00 and you to conduct the search at 3:00 in the morning." Segovia contends that because the officers at the scene knew that one kilogram of cocaine had been delivered by 8:20 p.m., their execution of the warrant at some time between 9:30 and 10:00 p.m. violated this express restriction.

■ Although the exact time of execution of the warrant is not established, even appellant agrees that it was at approximately 10:00 p.m. In light of this admission, we could simply decide that the nighttime restriction was inapplicable, since rule 41· provides that "[t]he term 'daytime' is used in this rule to mean the hours from 6:00 a.m. to 10:00 p.m. according to local time." Fed.R.Crim.P. 41(h). Passing over this narrow ground, however, we hold that the district judge was correct in finding that the officers, not having any reason to anticipate a piecemeal delivery of the cocaine, acted reasonably when they waited for delivery of the second kilogram. Their delay in light of the new information about the second kilogram was a reasonable interpretation of the limitation to execute the warrant within one hour of the arrival of the narcotics, since the full anticipated delivery had not yet occurred.

■ In addition, Nelson's contention that the officers should have been required to report to the magistrate this new information concerning possible delivery of a second kilogram is not sufficient to require suppression of the evidence seized from his apartment. We have held that law enforcement officers need report back new or correcting information only when that information is material to the magistrate's determination of probable cause. *See United States v. Marin-Buitrago*, 734 F.2d 889, 894 (2d Cir.1984). Here, the reported delivery of a second kilogram of cocaine did not implicate the magistrate's finding of probable cause, but affected only the limitation to execute the warrant within one hour of the arrival of the narcotics.

Finally, we find no merit to Segovia's argument that the district court should have voided the search warrant and excluded the fruits of the search under *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978), because the AUSA deliberately misstated the facts when conveying information to the magistrate. Specifically, Segovia charges that the AUSA misled the magistrate by stating that CI had viewed cocaine in Sego-

via's apartment within the last five days, when in fact he had seen it that same day, and that CI could not be sent back into the apartment to confirm the delivery of the cocaine. The government concedes and the district court found that these two statements were incorrect when made; however, Judge Sifton found that the misstatements were unintentionally made in the confusion of the moment and in no way reduced the magistrate's finding of probable cause. There is nothing on this record to suggest that the district court's finding was clearly erroneous.

The judgment of the district court is affirmed.