UNITED STATES of America,
Plaintiff–Appellee,

v.

ONE PARCEL OF PROPERTY LOCAT-
ED AT 15 BLACK LEDGE DRIVE,
MARLBOROUGH, CONNECTICUT,
With all Appurtenances and Attach-
ments Thereon, Defendant.

Appeal of Katherine HESLIN, a/k/a
Katherine Heslin McBride,
Claimant.

No. 706, Docket 89–6193.

United States Court of Appeals,
Second Circuit.

Argued Jan. 19, 1990.
Decided Feb. 27, 1990.

**98**

Jon L. Schoenhorn, Hartford, Conn. (Hurvitz, Hershinson & Schoenhorn, of counsel), for claimant-appellant.

Leslie C. Ohta, New Haven, Conn., Asst. U.S. Atty., D. Conn. (Stanley A. Twardy, Jr., U.S. Atty., D. Conn., of counsel), for plaintiff-appellee.

Before LUMBARD, FEINBERG and PRATT, Circuit Judges.

FEINBERG, Circuit Judge:

Claimant-appellant Katherine Heslin McBride appeals from an order of the United States District Court for the District of Connecticut (Alan H. Nevas, J.), forfeiting her interest as owner of record in the defendant property. That property included the single-family home owned by appellant, occupant of the house with her husband, John McBride, and their small child. Ap-

pellant argues that the district court erred in denying her motion for an evidentiary hearing under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and improperly granted summary judgment in favor of plaintiff-appellee United States despite the existence of a genuine issue of material fact regarding appellant's knowledge of drug trafficking from the defendant property.

For reasons given more fully below, we affirm the judgment of the district court.

## Background

In January 1988, the United States commenced this civil in rem forfeiture proceeding by filing a verified complaint against the defendant property at 15 Black Ledge Drive, Marlborough, Connecticut, alleging that the property was used, or was intended to be used, for the facilitation of drug offenses in violation of 21 U.S.C. § 881(a)(7). To support its allegation, the government relied on the June 1987 seizure from the premises, pursuant to a state search warrant, of "controlled substances, drug paraphernalia, and materials used in the packaging and distribution of controlled substances."

Early in February 1988, pursuant to an in rem warrant for arrest of property issued by the district court, the property was seized by the United States Marshal for the District of Connecticut. Shortly thereafter, appellant filed her notice of contest and claim of ownership and her answer. In the latter, appellant alleged as her second defense that the state search warrant was issued without probable cause and as her fourth defense that the original warrant affidavit contained false statements or statements made in reckless disregard for the truth, in violation of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). As her sixth defense, appellant denied any knowledge of any alleged drug trafficking activity and claimed that she was thus entitled to the statutory exemption for innocent ownership. See 21 U.S.C. § 881(a)(7). In August 1988, appellant filed a motion to supress all evidence

obtained at the defendant premises and requested an evidentiary hearing pursuant to *Franks*. In February 1989, after oral argument, the district court denied the motion.

A few months earlier, in November 1988, the government had moved for summary judgment. In support of its motion, the government relied on, among other things, the affidavit of Detective John MaGuire, co-affiant on the application for the state search warrant and participant in the execution of the state search warrant in June 1987. Appellant opposed the motion for summary judgment with her own affidavit, in which she stated that she was not present at the defendant premises at the time the search and seizure warrant was executed and certain drugs and drug paraphernalia seized; that she had "no knowledge, actual or constructive, that my husband ever possessed or stored any narcotics or drug related items within my home"; and that she had "no knowledge whatsoever of my husband ever conducting any narcotics trafficking from my home." She further stated that "[p]rior to the execution of the warrant, my husband never consumed, displayed, or spoke of narcotics or drug related materials in my presence."

In April 1989, the district court granted summary judgment in favor of the government. The district court found that the record established the following undisputed facts: Beginning in early 1987, John McBride became the target of a Statewide Narcotics Task Force investigation into large-scale narcotics trafficking activity in central Connecticut. Information on John McBride's drug-related activities developed to the point where there was sufficient probable cause to obtain a search and seizure warrant for his residence. On June 2, 1987, state and local police officers executed the warrant at that location, interrupting John McBride while he was openly processing narcotics in the living room. Cocaine, drug paraphernalia, cutting agents, a loaded revolver, $6,000 in cash and a $6,000 cashier's check payable to John McBride were discovered in "the family room." Another loaded revolver was also discovered in the kitchen, on top of a hutch located near the main entrance of the residence. The search uncovered in the master bedroom, which was shared by John and Katherine McBride, vials containing cocaine, and in a bedroom closet, a pair of Levi's containing $1,084 and a box containing a photograph of John McBride standing next to a triple beam scale, which appeared to have been taken at the residence.

Approximately 40 minutes after the search began, Katherine McBride arrived home with her child. She was observed to be calm when informed of what was taking place. Detective MaGuire declared that her demeanor indicated that "she was fully aware of the criminal activities which had occurred at her residence" and that "[s]he did not express disbelief, outrage, fear, or sorrow, responses often exhibited by innocent family members when evidence of drug trafficking is found at their residence." A confidential informant had informed Detective MaGuire that John McBride had amassed large sums of money through his narcotics trafficking activities, that Katherine McBride knew of her husband's drug activities from the residence and that she herself was a user of cocaine.

In the course of a deposition in March 1988, Katherine McBride invoked her Fifth Amendment privilege against self-incrimination in response to virtually every deposition question regarding drug activities alleged to have taken place in her home. She declined to answer, for example, whether or not she knew her husband was involved in drug trafficking, whether she consented to or benefited from his illegal activities, whether she had ever seen drug processing equipment in her house, whether drug sales had ever taken place in her presence and where the money came from to pay for the house, title to which is in her name and is unencumbered.

On this record, the district court held that appellant could not meet her burden of demonstrating a genuine issue for trial under Fed.R.Civ.P. 56(e) on the basis of an opposing affidavit containing "unqualified, conclusory statements" that she had no knowledge of drug trafficking taking place from her home. Accordingly, on June 28,

1989, the district court signed a decree of forfeiture. This appeal followed.

## Discussion

### I. *Franks* Hearing

Appellant argues that the district court erred in denying her request for an evidentiary hearing pursuant to *Franks.* The basis of the request was appellant's claim that false statements were intentionally or recklessly made in the affidavit supporting the state search warrant, thus requiring under *Franks* suppression of any testimony or evidence relating to the June 1987 search and seizure of the McBride residence. In its ruling, the district court assumed, without deciding, that *Franks* applies to a civil forfeiture proceeding as part of a claimant's Fourth Amendment rights.

*Franks* provides that if a criminal defendant makes a substantial preliminary showing that a false statement was knowingly, intentionally or recklessly made in order to obtain a search warrant *and* if the false statement was necessary to establish probable cause, the defendant is entitled to an evidentiary hearing to determine if the warrant was obtained improperly. There is authority for applying the protection of the Fourth Amendment to a civil forfeiture proceeding. See *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 696, 85 S.Ct. 1246, 1248, 14 L.Ed.2d 170 (1965) (evidence derived from search in violation of Fourth Amendment is inadmissible in a civil forfeiture proceeding); *Boyd v. United States,* 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886) (protections of Fourth Amendment apply in civil forfeiture proceeding). However, since on appeal the government assumed arguendo the applicability of *Franks* to this proceeding, we likewise make that assumption without needing to decide the issue.

Appellant contends that she has made the requisite preliminary showing under *Franks* to justify a hearing. The state search warrant was based in part on factual allegations from a confidential informant, including the information that an individual named "Barney" who lived at 15 Black Ledge Drive was heavily involved in the sale of narcotics from his residence. In support of her motion, appellant submitted an affidavit prepared by a private investigator, which challenged as false three statements contained within the search warrant affidavit: the description of the appearance of the residence and the direction it faced; the purported tracing of a certain phone number to a "Heslin" at 15 Black Ledge Drive, found under a reference to "Barney" in the records of an alleged drug trafficker; and finally, the alleged interviewing of the neighbors of John McBride who identified him as "Barney." Appellant contends that these inaccuracies suggest that the affiants' assertions regarding their corroboration of the confidential informant's information were unreliable and that their information therefore failed to establish the particularity of the location to be searched.

We cannot say that the district court was clearly erroneous, see *United States v. Segovia,* 800 F.2d 39, 42 (2d Cir.1986), in finding that the negative inferences and doubts raised by appellant failed to establish the requisite substantial preliminary showing. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684. The district court held that the affiants' clear statement that "the residence was observed to be as described" refuted any inference from the trivial inaccuracies in description that the affiants had never viewed the property to corroborate the informant's statements; that the mere fact of the incorrect phone number, which the government explained as an inadvertent transpositional error, did not establish a reckless or knowingly false statement; and that the neighbors' denials when approached by a private investigator could be explained by fear of retaliation. Thus, the district court took notice of the observation in *Franks* that while the information in a warrant application must be truthful, "[t]his does not mean 'truthful' in the sense

that every fact recited in the warrant affidavit is necessarily correct," but rather "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165, 98 S.Ct. at 2681.

Appellant's contention that the district court improperly relied on the government's subsequent submission to explain its inadvertent transpositional error ignores her burden of making a substantial preliminary showing that the error was reckless or knowing. Moreover, without generally approving the practice of submitting counteraffidavits in the face of a request for a *Franks* hearing, we see no reason why the district court could not properly consider a supplemental affidavit by which the government brought to the court's attention such an inadvertent transpositional error. Since appellant failed to make the requisite preliminary showing of falsity or reckless disregard under *Franks*, we need not go on to consider, as the district court subsequently did, whether there remained sufficient content in the warrant affidavit to support a finding of probable cause, even disregarding the statements claimed to be untrue.

## II. Propriety of Summary Judgment

Appellant also argues that the existence of a genuine issue of material fact regarding her knowledge of drug trafficking from her residence precluded the grant of summary judgment. Whether appellant has succeeded in raising such an issue must be determined in the context of the "peculiar procedural requirements of the forfeiture laws." See *United States v. One 56–Foot Motor Yacht Named Tahuna*, 702 F.2d 1276, 1283 (9th Cir.1983); cf. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) ("[T]he inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."). In a civil forfeiture proceeding under 21 U.S.C. § 881, the burden is initially on the government to establish its right to forfeiture by demonstrating probable cause. See 21 U.S.C. § 881(d) (incorporat-

ing the procedures for customs forfeitures); 19 U.S.C. § 1615. To establish its case, the government must have reasonable grounds, rising above the level of mere suspicion, to believe that certain property is subject to forfeiture. *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1160 (2d Cir.1986). If the government satisfies this probable cause showing, 19 U.S.C. § 1615 places on the claimant "the ultimate burden of proving that the factual predicates for forfeiture have not been met." *Banco Cafetero Panama*, 797 F.2d at 1160.

We agree with the district court that the government presented evidence sufficient to establish probable cause that the property was subject to forfeiture under 21 U.S.C. § 881(a)(7). This evidence included the arrest of John McBride when he was processing cocaine openly in the living room and the cocaine, cash, weapons and drug paraphernalia seized in the ensuing search. In addition, the affidavit of Detective MaGuire stated that a "known and reliable" confidential informant, who had often supplied truthful information, had told him that John McBride was a "full time" drug dealer who had amassed large sums of money through his narcotics activities, that Katherine McBride knew of her husband's drug activities from their residence and that she herself was a user of cocaine.

Appellant contends, however, that the district court could not properly rely on out-of-court statements attributed to an unidentified confidential informant. We disagree, at least insofar as this evidence was considered on the issue of probable cause. In view of the unusual relative burdens of proof in civil forfeiture proceedings, this court, as well as a number of other circuits, has recognized an exception to the requirements of Rule 56(e) that supporting and opposing affidavits be based upon personal knowledge and admissible evidence, allowing the government to establish probable cause on the basis of hearsay affidavits. See *United States v. Property at 4492 S. Livonia Rd., Livonia*, 889 F.2d 1258, 1267–

68 (2d Cir.1989); *Tahuna*, 702 F.2d at 1283. "The question of probable cause depends not upon the admissibility of the evidence upon which the government relies but only upon the legal sufficiency and reliability of the evidence." *Tahuna*, 702 F.2d at 1283. As indicated above, the evidence was plainly sufficient to establish probable cause, and there was sufficient information from which the district court could conclude that the hearsay information was reliable, particularly in view of the independent police work corroborating details of the confidential informant's information. See *Illinois v. Gates*, 462 U.S. 213, 241, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527 (1983).

■ In view of the government's probable cause showing, the burden shifted to the claimant to establish that the factual predicates for forfeiture had not been met, that is, on the facts of this case, that the illegal use was without appellant's knowledge or consent, thus bringing her within the statutorily created exemption for innocent ownership. In addition, appellant concedes that the evidence against John McBride was so "overwhelming" that summary judgment would have been proper had he owned the property. The district court's conclusion that appellant had failed to carry her burden of proving innocent ownership was based on its determination that there was "simply no probative evidence in the record from which a reasonable jury could find for the claimant, given the cocaine found throughout the house, the gun and other drug paraphernalia found in common areas of the house, the statements of the credible informant that the claimant was fully aware of her husband's drug trafficking, and the claimant's own calm response to the search of her home and the seizure of the aforementioned contraband." In view of appellant's failure to come forward with any evidence to support her assertions that she had no knowledge of drug trafficking from her residence, the district court concluded that appellant had failed to raise "a genuine issue for trial" under Rule 56(e).

We agree. The evidence was so "one-sided" that the government was entitled to summary judgment "as a matter of law." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. In her opposing affidavit, appellant merely asserts that she had no knowledge of drug trafficking taking place from her home, and that her husband never spoke of, consumed or displayed drugs or related materials in her presence. In view of the undisputed facts presented here, we agree with the district court that "more detailed factual substance in support of her claim of ignorance" was required.

We are aware that appellant challenges as inadmissible the hearsay statements of the confidential informant regarding her knowledge. Even if we accept arguendo that these statements, although admissible on the issue of probable cause, might be inadmissible regarding appellant's innocent owner defense, see *United States v. Property Known as 6109 Grubb Road*, 886 F.2d 618, 622 (3d Cir.1989), the result remains the same. It may be that under some circumstances a claimant's flat denial of knowledge, without more, could suffice to create a genuine issue of fact precluding summary judgment under Rule 56(e). But on these facts, which included the seizure of drugs, drug paraphernalia, large sums of cash and weapons from the common areas and the master bedroom, such a bare denial was insufficient to create a genuine triable issue. Moreover, we note that in early 1987 John McBride became a target of an investigation which culminated in his arrest in June 1987, suggesting that he had been involved in drug trafficking for at least this period of time, if not longer. Appellant has been married to John McBride for this period, as well as for many years before. Under these circumstances, appellant's bare claim that she had no knowledge of her husband's illegal activities becomes even more untenable. The district court properly found that appellant's conclusory allegations were incredible as a matter of law, and lacked "even a scintilla of evidence to support" her position. See *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) (per curiam) (while caution should be exercised in granting summary judgment where state of mind is an issue, "the existence of

undisputed facts can provide an adequate basis" for summary judgment).

Appellant also argues that the district court improperly drew a negative inference from the prior invocation of her privilege against self-incrimination in response to questions at the deposition relating to her knowledge of her husband's drug trafficking activities at their residence. It is not at all clear that the judge did make this inference. However, in general, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976).

Appellant maintains, however, that it is impermissible to draw such an adverse inference from a claimant's invocation of the privilege against self-incrimination in a civil forfeiture proceeding, especially during the pendency of parallel criminal charges. Relying principally upon *Baxter*, the government argues that it was entirely proper here for the judge to draw a negative inference from appellant's invocation of the privilege at her deposition.

There is authority for allowing the inference in a civil forfeiture proceeding, see *United States v. A Single Family Residence*, 803 F.2d 625, 629 n. 4 (11th Cir. 1986); there is also authority that throws into doubt the permissibility of such an adverse inference in this context, see *United States v. U.S. Currency*, 626 F.2d 11, 14–16 (6th Cir.), cert. denied sub nom. *Gregory v. United States*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980). The permissibility of an adverse inference from a claim of Fifth Amendment privilege in a civil forfeiture proceeding involving a home, cf. *4492 S. Livonia Rd.*, 889 F.2d at 1264–65, especially during the pendency of parallel criminal charges, poses a troubling question, given the severity of the deprivation at risk. We leave the resolution of this issue for another day, however, since any such adverse inference was not a necessary—let alone a sole—basis for the district court's determination here, in view of the government's other evidence. Cf. *Lefkowitz v. Cunningham*, 431 U.S. 801, 808 n. 5, 97 S.Ct. 2132, 2137 n. 5, 53 L.Ed.2d 1 (1977) (in construing *Baxter*, Court noted that an adverse inference is permitted against the invoker of the privilege where his silence "was only one of a number of factors to be considered by the finder of fact in assessing a penalty").

We have considered all of appellant's arguments, and they do not persuade us that the district court committed reversible error. Judgment affirmed.